UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Crystal Brewster,<br><br>Plaintiff,<br><br>-against-<br><br>Ava Finance, Inc.; Professional Debt Mediation, Inc.; Santander Consumer USA Inc.; Trans Union LLC a/k/a TransUnion; Experian Information Solutions, Inc.; Equifax Information Services LLC,<br><br>Defendants. | Civil Action<br>Case No.: 1:26-cv-04354<br><br>**COMPLAINT** |

Plaintiff Crystal Brewster ("Plaintiff"), by and through her attorneys, Petroff Amshen LLP, as and for her complaint against the defendants named herein (collectively, the "Defendants), hereby alleges the following upon personal knowledge, review of public record, and/or otherwise upon information and belief:

1. Plaintiff brings this action against Trans Union LLC a/k/a TransUnion ("TransUnion"), Experian Information Solutions, Inc. ("Experian"), and Equifax Information Services LLC ("Equifax") (collectively, the "CRAs"), as well as Ava Finance, Inc. ("Ava Finance"), Professional Debt Mediation, Inc. ("Professional Debt"), and Santander Consumer USA Inc. ("Santander") (collectively, the "Furnishers"), arising from their willful and negligent violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq.

## PARTIES

2. Plaintiff is an individual resident of the State of New York, residing in Queens County, and is a "consumer" as defined by 15 U.S.C. § 1681a(c).

3. Ava Finance is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in California, and is a "person" and a "furnisher" of information to consumer reporting agencies as defined by and subject to the FCRA, including the duties enumerated under 15 U.S.C. § 1681s-2.

4. Professional Debt is a foreign business corporation organized and existing under the laws of the State of Florida, with its principal place of business in Jacksonville, Florida, and is a "person" and a "furnisher" of information to consumer reporting agencies as defined by and subject to the FCRA, including the duties enumerated under 15 U.S.C. § 1681s-2.

5. Santander is a corporation organized and existing under the laws of the State of Illinois, with its principal place of business in Dallas, Texas, and is a "person" and a "furnisher" of information to consumer reporting agencies as defined by and subject to the FCRA, including the duties enumerated under 15 U.S.C. § 1681s-2.

6. TransUnion is a Delaware limited liability company, with its principal place of business in Chicago, Illinois, and is a "consumer reporting agency," as defined by and subject to 15 U.S.C. §§ 1681a(f) and 1681a(p).

7. Experian is an Ohio corporation, with its principal place of business in Costa Mesa, California, and is a "consumer reporting agency," as defined by and subject to 15 U.S.C. §§ 1681a(f) and 1681a(p).

8. Equifax is a Georgia limited liability company, with its principal place of business in Atlanta, Georgia, and is a "consumer reporting agency," as defined by and subject to 15 U.S.C. §§ 1681a(f) and 1681a(p).

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as Plaintiff's claims arise under federal law.

10. This Court has personal jurisdiction over each Defendant pursuant to Federal Rule of Civil Procedure 4(k)(1)(A) and New York Civil Practice Law and Rules ("C.P.L.R.") §§ 301 and 302, and the exercise of jurisdiction is consistent with the Due Process Clause of the Fourteenth Amendment.

11. Each of the Furnishers transacts business within the State of New York within the meaning of C.P.L.R. § 302(a)(1). Each markets and offers consumer financial products or collection services to New York residents, solicits and accepts New York consumers or accounts, and derives revenue from its business with New York consumers.

12. As part of that business, each of the Furnishers regularly furnishes information concerning New York consumers to the national consumer reporting agencies, including Experian, Equifax, and TransUnion, for inclusion in consumer reports. Each does so knowing that those reports are requested by, disseminated to, and relied upon by creditors, lenders, landlords, and other users located in New York. By furnishing such information, each of the Furnishers purposefully avails itself of the privilege of conducting activities in New York and invokes the benefits and protections of its laws.

13. Plaintiff transmitted her dispute, together with her identification and FTC Identity Theft Report, to the CRAs from New York, and that submission identified Plaintiff as a consumer residing in New York. When the CRAs forwarded notice of the dispute to the Furnishers, each Furnisher knew, or had reason to know, that Plaintiff was a New York

consumer and that the disputed Accounts appeared on the consumer report of a New York resident.

14. With knowledge that Plaintiff was a New York consumer, each of the Furnishers continued to furnish information concerning the disputed Accounts into Plaintiff's consumer file, knowing that the information would be disseminated to and relied upon by users in New York and that the resulting harm would be suffered by Plaintiff in New York. Plaintiff's claims against each of the Furnishers arise directly from that New York-directed conduct.

15. Ava Finance markets and offers its consumer credit-building products to New York residents, including a secured credit-builder loan that Ava Finance publicly represents is available to consumers in New York. Ava Finance furnishes information concerning New York consumers, including Plaintiff, to the national consumer reporting agencies, maintained or serviced an account for Plaintiff, a New York consumer, and, upon information and belief, derives revenue from its business with New York consumers. The records reflecting the opening, servicing, and reporting of Plaintiff's account are within Ava Finance's possession, custody, and control.

16. Professional Debt is a debt-collection company that collects, or attempts to collect, debts from New York consumers and furnishes information concerning those consumers, including Plaintiff, to the national consumer reporting agencies. Professional Debt is licensed as a debt collection agency by the New York City Department of Consumer and Worker Protection and, upon information and belief, is authorized to do business in the State of New York as a foreign corporation. Because the Professional Debt Account arises from an obligation Plaintiff never incurred and was the product of identity theft, its reporting was not incident to any bona fide transaction by Plaintiff centered in another State.

17. Santander is licensed by the New York State Department of Financial Services as a lender pursuant to Article 9 of the New York Banking Law, and its business includes the underwriting, origination, and servicing of retail automobile installment contracts involving New York consumers. Santander markets and offers consumer automobile financing to New York residents, maintained or serviced an account for Plaintiff, a New York consumer, furnishes information concerning New York consumers to the national consumer reporting agencies, and, upon information and belief, derives substantial revenue from its business with New York consumers.

18. Each of the CRAs transacts business within the State of New York. Each maintains consumer files on New York residents, including Plaintiff; prepares and sells consumer reports concerning New York residents to users located in New York, including creditors, lenders, and landlords; and is registered to do business in New York.

19. TransUnion, a Delaware limited liability company, is registered to do business in New York and receives service of process in New York through its registered agent, The Prentice-Hall Corporation System, Inc., 80 State Street, Albany, New York. TransUnion maintains credit files on New York residents, including Plaintiff, and prepared, sold, or disseminated consumer reports concerning Plaintiff to users in New York.

20. Experian, an Ohio corporation, is registered to do business in New York and maintains a registered agent for service of process in New York, CT Corporation System, 28 Liberty Street, New York, New York. Experian maintains credit files on New York residents, including Plaintiff, and prepared, sold, or disseminated consumer reports concerning Plaintiff to users in New York.

21. Equifax, a Georgia limited liability company, is registered to do business in New York and receives service of process in New York through its registered agent, Corporation Service Company, 80 State Street, Albany, New York. Equifax prepares and sells consumer reports concerning New York residents to users in New York, and prepared, sold, or disseminated consumer reports concerning Plaintiff to users in New York.

22. Plaintiff transmitted her dispute to the CRAs from New York. Each CRA directed its reinvestigation of Plaintiff's dispute, and its handling of Plaintiff's identity-theft block request, at the consumer file of a New York resident. Plaintiff's claims against the CRAs under 15 U.S.C. §§ 1681i, 1681e(b), and 1681c-2 arise directly from that New York-directed conduct.

23. In the alternative, this Court has personal jurisdiction over each Defendant under C.P.L.R. § 302(a)(3). Each Defendant committed a tortious act outside New York, namely its violations of the FCRA concerning Plaintiff, that caused injury to Plaintiff in New York; each regularly does or solicits business in New York, engages in a persistent course of conduct in New York, or derives substantial revenue from New York consumers; and each expected or should reasonably have expected its acts to have consequences in New York while deriving substantial revenue from interstate commerce.

24. The exercise of personal jurisdiction over each Defendant comports with due process and traditional notions of fair play and substantial justice. New York has a strong interest in protecting its residents from inaccurate credit reporting; each Defendant conducts business with New York consumers and would face no undue burden in defending in this forum; and Plaintiff has a substantial interest in obtaining relief in the State where she resides and suffered her injuries.

25. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district, including the dissemination of and reliance upon Plaintiff's consumer reports in this District and the harm suffered by Plaintiff in this District.

## STATEMENT OF FACTS

26. Plaintiff is a victim of identity theft.

27. Plaintiff discovered the identity theft when she obtained and reviewed her consumer credit reports and found multiple accounts that she had never opened or authorized, together with numerous credit inquiries that she had never initiated.

28. On or about December 5, 2025, after identifying the fraudulent accounts and unauthorized inquiries, Plaintiff filed an identity theft report with the Federal Trade Commission, FTC Report No. 194575679, identifying the fraudulent accounts opened in her name.

29. Plaintiff's pre-dispute consumer reports reflected the following accounts at issue: (a) a Professional Debt account (Account No. 6300XXXX) (the "Professional Debt Account"); (b) an Ava Finance account (Account No. IYZAXXXX) (the "Ava Finance Account"); and (c) a Santander account (Account No. 6911XXXX) (the "Santander Account") (collectively, the "Accounts").

30. The Professional Debt Account, reported with a balance of $4,394.00 in derogatory collection status by TransUnion and listing an original creditor of 09 1890 Adams, is the product of identity theft; Plaintiff did not open, authorize, or incur it.

31. The Ava Finance Account, reported in derogatory status by Equifax, Experian, and TransUnion, is Plaintiff's own account, which Ava Finance represented it would remove following a prior dispute, yet which has continued to be reported inaccurately.

32. The Santander Account, an auto-finance account reported in derogatory status by Equifax, Experian, and TransUnion, is Plaintiff's own account, which she settled and which was closed, yet which has continued to be reported inaccurately as derogatory.

33. On or about March 6, 2026, Plaintiff transmitted a comprehensive written dispute package to each of the CRAs from New York.

34. The dispute package contained: (1) a dispute letter that addressed each of the Accounts and requested that the CRAs investigate the fraudulent or inaccurate nature of the Accounts; (2) a copy of Plaintiff's personal identification; and (3) a copy of Plaintiff's FTC Identity Theft Report, Report No. 194575679. The dispute package identified Plaintiff as a consumer residing in New York.

35. Upon receipt of Plaintiff's dispute, each of the CRAs was required to forward notice of the dispute, together with all relevant information, to each furnisher that had furnished the disputed information, pursuant to 15 U.S.C. § 1681i(a)(2).

36. Upon receipt of the dispute forwarded by the CRAs, each Furnisher was required to conduct a reasonable investigation with respect to the disputed information and to report the results of its investigation to the CRAs, pursuant to 15 U.S.C. § 1681s-2(b).

37. Pursuant to 15 U.S.C. § 1681c-2(a), upon receipt of Plaintiff's dispute, identification, and FTC Identity Theft Report, the CRAs were required to block the reporting of any information in Plaintiff's file that Plaintiff identified as resulting from an alleged identity theft, no later than four (4) business days after the date of receipt.

38. On or about April 20, 2026 and May 13, 2026, Plaintiff obtained post-dispute consumer reports reflecting the CRAs' investigations.

39. The post-dispute reports revealed that the Accounts continued to be reported in derogatory status, despite Plaintiff's dispute and supporting documentation.

40. The post-dispute reports also revealed that the Accounts were reported inconsistently across the bureaus.

41. As a direct and proximate result of the inaccurate and fraudulent Accounts appearing on her consumer reports, Plaintiff has been denied credit on multiple occasions, both before and after her dispute, as evidenced by the following:

42. On or about July 21, 2025, Plaintiff was declined for the Cerulean Mastercard issued by The Bank of Missouri (Continental Finance), which cited, among other reasons, "too many serious delinquencies," based on information obtained from Experian.

43. After Plaintiff submitted her dispute and the defendants failed to correct the reporting, the denials continued.

44. On or about May 14, 2026, Plaintiff was denied a TAB Bank credit account through Sunbit, which cited, among other reasons, that revolving and bankcard balances were too high in proportion to credit limits and that there were "too many inquiries."

45. On or about May 14, 2026, Plaintiff was denied the Prosper Card issued by Coastal Community Bank, whose adverse action notice cited "serious delinquency, and public record or collection filed."

46. On or about July 9, 2026, Capital One, N.A. declined to extend Plaintiff a credit card offer for which she had been screened.

47. On or about July 15, 2026, Plaintiff was denied the Perpay Credit Card issued by Celtic Bank, whose adverse action notice cited, among other reasons, a reported delinquency and too many recent inquiries.

48. Each of the foregoing creditors that relied on a consumer report from one or more of the CRAs reported that its decision was based, in whole or in part, on information contained in that report.

49. On or about May 28, 2026, a residential mortgage loan for which Plaintiff had previously been approved (REMI Financial Services LLC, Loan No. 16372737) was reclassified to adverse and denied. Upon information and belief, the continued presence of the inaccurate and fraudulent Accounts on Plaintiff's consumer reports suppressed her credit standing and increased the reserve and funds-to-close requirements applicable to her loan program, contributing to the loss of this home-financing opportunity.

50. The continued presence of the fraudulent and inaccurate Accounts on Plaintiff's consumer reports, and the repeated credit denials that followed, have caused Plaintiff significant anxiety, an overwhelming sense of helplessness, and emotional distress that continues to the present day.

51. The harm is ongoing, and Plaintiff's injuries are directly traceable to the defendants' conduct.

## CAUSES OF ACTION

### COUNT I: Willful Noncompliance With The FCRA *Against The Furnishers* (Violations of 15 U.S.C. § 1681s-2(b))

52. Plaintiff incorporates by reference each of the preceding paragraphs.

53. The Furnishers are each a "person" and a "furnisher" of information to consumer reporting agencies as defined by and subject to the FCRA, including the duties enumerated under 15 U.S.C. § 1681s-2.

54. The Furnishers received notice of Plaintiff's dispute from the CRAs.

55. The Furnishers provided information relating to Plaintiff to the CRAs that they knew or had reasonable cause to believe was inaccurate.

56. With respect to Ava Finance, the Ava Finance Account, which Plaintiff disputed as inaccurate, continued to be reported in derogatory status on Plaintiff's Equifax, Experian, and TransUnion consumer reports despite Ava Finance's prior representation that the account would be deleted. Despite receiving notice of Plaintiff's dispute, Ava Finance continued to furnish inaccurate information concerning the account to the CRAs without correction or deletion.

57. With respect to Professional Debt, the Professional Debt Account, with original creditor 09 1890 Adams, was reported with a balance of $4,394.00 in derogatory collection status on Plaintiff's TransUnion consumer report. This account was opened without Plaintiff's knowledge, consent, or authorization, and constitutes a fraudulent account resulting from identity theft, as documented by FTC Identity Theft Report No. 194575679. Despite receiving notice of Plaintiff's dispute, Professional Debt failed to investigate and continued to furnish derogatory information concerning the account to the CRAs without correction or deletion.

58. With respect to Santander, the Santander Account was an auto-finance account that Plaintiff had settled and that was closed, yet Santander continued to report the account in derogatory status on Plaintiff's Equifax, Experian, and TransUnion consumer reports without accurately reflecting its resolved status. Despite receiving notice of Plaintiff's dispute, Santander failed to investigate and continued to furnish inaccurate information concerning the account to the CRAs without correction.

59. The Furnishers had reasonable cause to believe the information was inaccurate: as to the Professional Debt Account, based on the absence of any documentation authorizing Plaintiff's opening of the account; and as to the Ava Finance Account and the Santander

Account, based on the Furnishers' own account and payment records reflecting that the accounts had been closed, settled, or resolved. Each Furnisher was further notified of the inaccuracy upon receiving Plaintiff's dispute forwarded by the CRAs.

60. The Furnishers continued to provide information to the CRAs after being notified, through the CRAs, that the specific information was inaccurate.

61. The Furnishers had specific knowledge that would cause a reasonable person to have substantial doubts about the accuracy of the information regarding the accounts.

62. After receiving notice of Plaintiff's dispute from the CRAs, the Furnishers continued to furnish information concerning the Accounts to the CRAs, including continuing to report the Professional Debt Account as Plaintiff's obligation, despite knowing or having reasonable cause to believe that such information resulted from identity theft or was otherwise inaccurate.

63. The Furnishers' conduct was willful.

64. The Furnishers acted with knowledge of their obligations under the FCRA and with reckless disregard for Plaintiff's rights and the accuracy of the information reported.

65. This willfulness is evidenced by the Furnishers' failure to respond meaningfully to Plaintiff's dispute, their failure to produce documentation supporting the disputed Accounts, and their continued reporting of the inaccurate information despite clear notice of Plaintiff's dispute and of the identity theft underlying the Professional Debt Account.

**COUNT II: Negligent Noncompliance With The FCRA *Against The Furnishers***
**(Violations of 15 U.S.C. § 1681s-2(b))**

66. Plaintiff incorporates by reference each of the preceding paragraphs.

67. The Furnishers' conduct constituted negligent noncompliance as furnishers of information, thereby violating their duties under 15 U.S.C. § 1681s-2(b).

68. The Furnishers failed to exercise reasonable care in their information furnishing practices and in their investigation processes upon receiving notice of Plaintiff's dispute, thereby breaching their duties owed to Plaintiff under the FCRA.

**COUNT III: Willful Noncompliance With The FCRA *Against The CRAs***
**(Failure to Conduct Reasonable Reinvestigation - Violation of 15 U.S.C. § 1681i)**

69. Plaintiff incorporates by reference each of the preceding paragraphs.

70. The CRAs are each a "consumer reporting agency" as defined by and subject to the FCRA, 15 U.S.C. § 1681a(f).

71. The CRAs received a dispute from Plaintiff concerning the inaccurate information related to the Accounts appearing on Plaintiff's consumer report.

72. Pursuant to 15 U.S.C. § 1681i(a), upon receipt of Plaintiff's dispute, the CRAs were required to conduct a reasonable reinvestigation to determine the accuracy of the disputed information and record the current status of the disputed information, or delete the item from the file, within thirty (30) days of receiving the dispute.

73. The CRAs failed to conduct a reasonable reinvestigation of Plaintiff's dispute.

74. The CRAs failed to review all relevant information submitted by Plaintiff.

75. The CRAs failed to delete or correct the inaccurate information, or to accurately record the status of the disputed information concerning the Accounts.

76. The Accounts continued to be reported inconsistently across the bureaus following Plaintiff's comprehensive dispute, as set forth above, evidencing the failure of each CRA to conduct a reasonable reinvestigation.

77. The CRAs' failure to perform a reasonable reinvestigation after receiving Plaintiff's comprehensive dispute, accompanying documentation of the identity theft underlying

the Professional Debt Account, and documentation of the inaccurate reporting of the Ava Finance Account and the Santander Account, was willful.

78. The CRAs acted with knowledge of their statutory duties or in reckless disregard of those duties and Plaintiff's rights.

**COUNT IV: Negligent Noncompliance With The FCRA *Against The CRAs***
**(Failure to Conduct Reasonable Reinvestigation - Violation of 15 U.S.C. § 1681i)**

79. Plaintiff incorporates by reference each of the preceding paragraphs.

80. The CRAs' conduct constituted negligent noncompliance with their duty to conduct a reasonable reinvestigation of disputed information under 15 U.S.C. § 1681i(a).

81. The CRAs failed to exercise reasonable care in their reinvestigation process concerning Plaintiff's dispute of the Accounts.

**COUNT V: Willful Noncompliance With The FCRA *Against The CRAs***
**(Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy - Violation of 15 U.S.C. § 1681e(b))**

82. Plaintiff incorporates by reference each of the preceding paragraphs.

83. Pursuant to 15 U.S.C. § 1681e(b), CRAs must follow reasonable procedures to assure maximum possible accuracy of the information in their reports.

84. The CRAs failed to follow reasonable procedures to ensure maximum possible accuracy of the information concerning Plaintiff.

85. The continued reporting of the fraudulent and inaccurate Accounts on Plaintiff's consumer reports, even after Plaintiff's comprehensive dispute package including FTC Identity Theft Report No. 194575679, together with the inconsistent reporting of the Accounts across Equifax, Experian, and TransUnion, demonstrates the CRAs' failure to adhere to this statutory mandate.

86. The CRAs' failure to establish or follow such reasonable procedures was willful, representing a knowing failure to comply with their statutory duties or a reckless disregard for the accuracy of the information they compile and disseminate about Plaintiff.

**COUNT VI: Negligent Noncompliance With The FCRA *Against The CRAs***
**(Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy - Violation of 15 U.S.C. § 1681e(b))**

87. Plaintiff incorporates by reference each of the preceding paragraphs.

88. The CRAs' conduct constituted negligent noncompliance with their duty to follow reasonable procedures to assure maximum possible accuracy of information in their consumer reports under 15 U.S.C. § 1681e(b).

89. The CRAs failed to exercise reasonable care in their consumer report preparation and accuracy assurance processes.

**COUNT VII: Willful Noncompliance With The FCRA *Against The CRAs***
**(Failure to Block Identity Theft Information - Violation of 15 U.S.C. § 1681c-2)**

90. Plaintiff incorporates by reference each of the preceding paragraphs.

91. Pursuant to 15 U.S.C. § 1681c-2(a), a consumer reporting agency must block the reporting of any information in the file of a consumer that the consumer identifies as information that resulted from an alleged identity theft, no later than four (4) business days after the date of receipt by such agency of: (1) appropriate proof of the identity of the consumer; (2) the identification of such information by the consumer; and (3) a statement by the consumer that the information does not relate to any transaction by the consumer.

92. Plaintiff provided the CRAs with all necessary items for an identity theft block under 15 U.S.C. § 1681c-2(a) via her dispute submission transmitted on March 6, 2026, including appropriate proof of identity, FTC Identity Theft Report No. 194575679, which identified the accounts Plaintiff reported as resulting from identity theft, including the

Professional Debt Account, and a statement that those accounts do not relate to any transaction by Plaintiff.

93. The CRAs willfully failed to timely block the reporting of the Professional Debt Account within four business days of their receipt of Plaintiff's complete request and documentation.

94. Alternatively, if the CRAs did implement a block, they impermissibly and willfully rescinded such block without proper notification to Plaintiff or a valid basis, as the Professional Debt Account continued to appear on Plaintiff's consumer reports.

95. The CRAs' failure to block, or their improper rescission of a block, regarding the Professional Debt Account was willful, demonstrating a knowing or reckless disregard for their obligations under 15 U.S.C. § 1681c-2.

**COUNT VIII: Negligent Noncompliance With The FCRA *Against The CRAs***
**(Failure to Block Identity Theft Information - Violation of 15 U.S.C. § 1681c-2)**

96. Plaintiff incorporates by reference each of the preceding paragraphs.

97. The CRAs' conduct constituted negligent noncompliance with their duties to block the reporting of information resulting from identity theft under 15 U.S.C. § 1681c-2.

98. The CRAs failed to exercise reasonable care in implementing or maintaining the required block on information related to the Professional Debt Account.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in her favor and against the defendants, jointly and severally where appropriate, for the following:

99. Actual damages in an amount to be fully determined at trial, including but not limited to compensation for credit denials, damage to creditworthiness and reputation, financial burden, and emotional distress, pursuant to 15 U.S.C. §§ 1681n(a)(1) and 1681o(a)(1);

100. Statutory damages, as permitted under 15 U.S.C. § 1681n(a)(1)(A);

101. Punitive damages in an amount to be determined at trial as may be allowed under 15 U.S.C. § 1681n(a)(2) for the willful and reckless violations of the FCRA;

102. Reasonable attorneys' fees and costs incurred in prosecuting this action, pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2).

**DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38, Plaintiff requests a trial by jury on all issues so triable.

Dated: Brooklyn, New York
July 20, 2026

**PETROFF AMSHEN LLP**
*Attorneys for Plaintiff,*
Crystal Brewster

*/s/ Serge F. Petroff*
Serge F. Petroff, Esq.
1795 Coney Island Avenue, Third Floor
Brooklyn, New York 11230
Telephone: (718) 336-4200
Email: spetroff@petroffamshen.com